CARRUTH *v.* EASTERLING

No. 42582 March 11, 1963 150 So. 2d 852

*William E. Andrews, Jr.*, Purvis, for appellant.

*Jesse W. Shanks*, Purvis, for appellee.

RODGERS, J.

S. J. Easterling presented an affidavit in replevin to the Circuit Clerk of Lamar County, Mississippi, and a writ was duly issued on November 15, 1961, in accordance with Sec. 2841, Miss. Code 1942, Rec. The property was described in the affidavit and writ as: One (1) black cow with white mottled face, muly-headed, approximately five (5) years old, with one (1) white-faced calf, approximately eight (8) months old, both of value of Two Hundred Dollars ($200); and one (1) blackish-red colored bull yearling, approximately two (2) years of age of the value of One Hundred Dollars ($100). The return of the sheriff was filed November 21, 1961, showing the service of the writ and an acceptance of a bond by the sheriff for the property described in the writ of replevin, dated November 17, 1961. A declaration was duly filed by plaintiff in accordance with Sec. 2859, Miss. Code 1942, Rec., on the 19th day of January 1962.

The declaration set out the foregoing proceedings, including plaintiff's demand for the cattle therein described, and also an amendment alleged that "thereafter and during the early Spring of 1961, the above-described muley-headed black cow with white mottled face, who had been bred by a white-faced bull, gave birth to a white-faced calf which said calf is now about ten (10) months old, and that since the early Spring of 1961, plaintiff was, and now is the owner of and entitled to

the immediate possession of said white-faced calf which is situated in Lamar County, Mississippi.''

Defendant filed his answer admitting that on December 15, 1960, plaintiff was the owner of the cattle described in the writ of replevin, but denied he was entitled to the possession thereof, and denied that the plaintiff is now the owner of the calf born to the ''muley-headed, black cow with white-mottled face'', admitted to be in the possession of defendant. The defendant claimed ownership of the property.

Defendant also filed a counterclaim asserting that the cattle above-described went upon the land of defendant and grazed upon his crop with knowledge of plaintiff and that the counter-claimant had expended $300 in feeding and caring for the cattle. It is alleged in the answer that plaintiff kept the herd of cattle then on defendant's land; that defendant made demand upon plaintiff for damages caused by the herd to his crop, and that a settlement was had between them, whereby plaintiff gave defendant the mother cow and a red bull described in the writ of replevin in settlement of the damage done by plaintiff's cattle to the crop.

It is admitted that a calf was born to one of the cows, but it was asserted that plaintiff was not entitled to possession of the calf. The defendant demanded that he be awarded possession of the three head of cattle and a judgment against plaintiff for $300.

Plaintiff answered the counterclaim, denied the affirmative allegations and moved the court to strike the counterclaim from the answer. Plaintiff also amended his declaration so as to claim an additional calf which had been born to the muley-headed, black cow since the declaration was filed, and claimed it to be the property of plaintiff, and to assert that it was also unlawfully withheld by defendant.

Motion to strike the counterclaim was overruled. The case then proceeded to trial and at the end of the trial,

the judge struck out the counterclaim for damages. The case was submitted to the jury on the question of the right of the possession of the property, and the jury returned a verdict in favor of plaintiff for all of the cattle described in the declaration. Defendant made a motion for a new trial, and when this was overruled, he appealed to this Court.

This suit is the result of a misunderstanding between neighbors, growing out of the following circumstances: Appellant and appellee are resident farmers of Lamar County, Mississippi, and live about two miles apart, a few miles east of Sumrall, Mississippi. Howard Carruth, appellant, had fenced a field of approximately eighty acres near his home. On September 28, 1960, appellant had twenty acres of this field in corn, and Mrs. Alcus Graham had an additional fourteen acres of the field, away from the house, in corn. Appellee was, at the time, the owner of a herd of cattle, which he permitted to run at large "on the range." On the aforementioned date, Mrs. Graham was in the process of gathering her corn in the field above-mentioned when she observed twenty or twenty-four head of cattle coming from toward the branch. She made an effort to get the cows out of the field, and although she succeeded in getting some out, most of the herd remained in the field. She saw one cow jump the fence. Mrs. Easterling, wife of appellee, discovered a note on her door stating "Your cows are in Carruth's field." Appellee and his son went to see appellant with reference to the cows and both testified that appellant stated that he had gathered his crop and that these cows would not bother anything in the field, and for that reason they did not attempt to get them out. Mrs. Carruth testified, on the other hand, that Mr. Easterling promised to come back and get the cows but he never did. At a later date, Mrs. Easterling went to the constable in an effort to have him recover the cattle. The constable went to ap-

pellant and suggested that Mr. Carruth give back to Mr. Easterling one of the cows and also suggested that he keep the old black cow with a white motley face and a reddish bull yearling, in settlement of the damages claimed. He stated that Mrs. Easterling told him to tell this to appellant and that he did, and that he got the Holstein heifer and hauled it back to appellee, but at first appellee said ''Well, we'll just let them have them all. I ain't going to fool with them.'' but testified that Mr. Aultman said '' 'I'll put the heifer in my truck and bring her to you,' and we did the next morning, and Mrs. Easterling gave Mr. Aultman $2 to bring it down there'', and that appellee agreed to this arrangement. S. J. Easterling and his wife, however, testified that they did not agree to settle the matter by giving to appellant the two cows.

Appellant assigned sixteen alleged errors in the record on which a reversal is sought. He vigorously argued four of these assignments of error: (1) The verdict of the jury is contrary to the overwhelming weight of the evidence and law. (2) The trial judge granted an erroneous instruction. (3) The court erred in permitting an amendment to the declaration to include a calf which had been born to the muley-headed black cow described in the affidavit and writ, since the writ of replevin had been served and the declaration filed. (4) The trial court erred in dismissing defendant's counterclaim and refusing defendant one instruction which permitted the jury to return a verdict in favor of defendant for alleged damages done to defendant's crop and for food given the cows by appellant while the cattle were impounded.

### I.

In determining the issues here involved, we consider the assignment of errors in the sequence in which they were presented in the trial court, rather than in the numerical order they are presented for argument.

The first question to be determined is: Did the trial court commit reversible error in permitting an amendment to the declaration so as to claim and include a calf born to the muley-headed black cow, since the writ of replevin was served and the declaration filed?

The record shows in this case that after the defendant had given bond for the cattle involved herein, seized under the writ of replevin, and after the plaintiff had filed his declaration, the mother cow, described as a "muley-headed black cow with white mottled face" gave birth to the calf described in the amendment to the declaration, hence the plaintiff sought to amend his declaration to include this calf.

■■ ■ Amendments to pleadings are liberally allowed under our court procedure. Sec. 1511, Miss. Code 1942, Rec. Moreover, amendments may be made to the pleadings in replevin actions. See McCarty v. Key, 87 Miss. 248, 39 So. 780; 46 Am. Jur., Replevin, Sec. 107, p. 60.

In 46 Am. Jur., Replevin, Sec. 107, p. 60, the text-writer makes the following statement: "Where facts have arisen since the commencement of the action and before judgment which would vary the relief to which the plaintiff or defendant would have been entitled at the commencement of the action, such facts may be alleged in an amended petition, answer, or cross petition."

It has been said that "The right to amend is as liberally accorded in replevin actions as in other causes. The amendment of pleadings is largely a discretionary matter, and a decision on such an application will not be reversed unless it is shown that there has been a clear abuse of discretion by the trial court. * * * Practically the only limitation upon the power of the court to allow plaintiff to amend the complaint is that a new cause of action cannot be introduced * * *". 34 Cyc., Replevin, IV, F, 1, a, p. 1489. See also 77 C. J. S., Replevin, etc. Sec. 167, pp. 116-7; Kirch v. Davies, 55 Wisc. 287, 11

N. W. 689; Kelly v. Bliss, 54 Wisc. 187, 11 N. W. 488; Cain v. Cody (Calif.), 29 P. 778.

It has been said that "In replevin the court may determine, not only the question of the right of possession, but also the right of property", and although the subject-matter litigated in replevin "necessarily consists only of property mentioned in the complaint", nevertheless "the rule does not exclude litigation in the action of the right to the increase of the disputed property." 34 Cyc., Replevin, p. 1517.

It is a well-settled rule that the offspring follows the condition of the mother. This rule is expressed in the Latin maxim, *partus sequitur ventrem*. See Dyer v. State, 88 Ala. 229, 7 So. 267.

It is pointed out in 4 Am. Jur., 2d., Animals, Sec. 10, p. 257, that "The general rule, in the absence of an agreement to the contrary, is that the offspring or increase of tame or domestic animals belongs to the owner of the dam or mother * * * In this respect the common law follows the civil and is founded on the maxim, 'partus sequitur ventrem' * * * Furthermore, the increase of the increase, ad infinitum, of domestic animals comes within the rule and belongs to the owner of the original stock." The case of Henry v. Dillard, 68 Miss. 536, 9 So. 298, is in point here. This was a replevin suit for a mare and colt. A judgment failed to set the value of the colt separately, and this Court said: "A mare and her young offspring may, we think, be properly considered, according to common understanding, as so necessarily and intimately connected together as to constitute one whole. * * * The union of a dam and her tender offspring must be conceded to be more intimate than that between a vehicle and its harness."

The case of Buckley v. Buckley, 12 Nev. 423 (1877), is of interest to us since it is based upon a Mississippi authority. In the Buckley case, the plaintiff had recovered a band of ewes on a replevin writ. The plaintiff was

awarded the sheep on the trial. During the trial, defendant sought to recover the increase of the sheep, alleging that the ewes replevied by plaintiff in November 1873, by breeding, had increased by four thousand lambs. Defendant also claimed that plaintiff had shorn from the band of sheep twenty-eight thousand, five hundred pounds of wool. The trial court sustained an objection to the evidence as to the increase, and the Supreme Court said: "Admitting as a fact, then, that the original band belonged to respondent at the time they were replevied by appellant, as the jury found, and so continued until the trial, it follows that respondent was entitled to judgment for their return, if a return could be had; otherwise, their value, together with such damages as with their return in one case, or their value in the other, was necessary in order to completely indemnify her on account of the wrongful act of appellant. And under the maxim partus sequitur ventrem, her rights relative to the increase were precisely the same as those just stated concerning the original flock." The case of Jordan v. Thomas, 31 Miss. 558, is cited in the Buckley case, in which this Court said: "The title to the mother, carried with it a title to her offspring, when born. Having a right to recover the mother, the plaintiff could recover that which the mother produced pending the suit, and the only question which could arise, would be whether it was even necessary to name the offspring in the judgment of the court." The following cases are to the same effect: Morris v. Coburn, 71 Tex. 406, 9 S. W. 345; Newman v. Jackson, 12 Wheat. 570; White v. Storms, 21 Mo. App. Rep. 288; Stewart v. Ball's Admr., 33 Mo. 154; Phipps v. Martin, 33 Ark. 207; Seay v. Bacon, 4 Sneed 99 (Tenn.).

We are therefore of the opinion that the trial court was correct in permitting plaintiff to amend his declaration to include the calf born to the mother cow after the writ of replevin was served upon defendant.

Having decided that a calf born subsequent to the service of the writ of replevin was subject to the judgment of the court and could be brought in by amendment, it follows that the instruction complained of by appellant, wherein the court added the description of the calf, was properly submitted to the jury.

## II.

The contention of appellant that the trial court committed reversible error, in striking out and withdrawing from the jury's consideration the counterclaim of appellant for damage alleged to have been done because of the trespass of the cattle upon his cornfield, and for damages resulting to appellant by reason of the feed furnished the cattle by him while they were impounded, has been of considerable interest to this Court, because of the recent amendment to the Replevin Statutes of this State. Section 2859, Miss. Code 1942, was amended by Chap. 269, Laws 1960, so as to permit the defendant to plead ''as provided by law.'' This section of the Code was previously in the following language: ''The declaration may be filed after the issuance of the writ, if it be filed on or before the first day of the return term, or before any order of dismissal is taken; and the action may be tried at the first term of the court. The defendant may plead that he is not guilty of the premises charged against him, and this plea shall put in issue not only the right of the plaintiff to the possession of the property, but also the wrongful taking and detention, or wrongful detention thereof, as the case may be.'' The amendment above-mentioned left out of the new law the second sentence and substituted the following words: ''The defendant may plead as provided by law.''

The action of replevin has had a long, interesting and turbulent history. It is derived from two sources, the common law and English statutory law. At common law, a writ of replevin was issued out of the court of Chan-

cery and could be sued out only at Westminister, afterwards by the statute of Marlbridge, 52 Henry III, Ch. 21, the sheriff of each county "upon plaint to him made" was authorized to replevy the goods. 3 Black Com. 147, Cobbey on Replevin, Sec. 525, p. 277.

There were many common-law pleas available to a defendant in answer to the replevin action. The plea of non cepit or non cepit modo et forma was the usual plea and was a direct denial of the taking in the manner and form alleged by the plaintiff. The plea was originally used to recover a distress. Special matter could not be shown under a plea of non cepit because this plea admitted the property to be in the plaintiff. Another plea called non detinent was used to put in issue, not only the wrongful detention but plaintiff's right to the property. Wells on Replevin, Sec. 686, p. 374. Most of the states now permit a general issue on a plea of not guilty.

Under the English law and the early opinions in this country, pleas of recoupment and set-off were not allowed. Cobbey on Replevin, p. 419; 46 Am. Jur., Replevin, Sec. 62, p. 37; 151 A. L. R. 541. An early English statute (1706), 4 Ann C. 16, permitted defendant to file several pleas in defense of the action. It is said accounts could not be adjusted and settled in a replevin action. Whitworth v. Thomas, 83 Ala. 308.

Section 2859, Code 1942, before the 1960 amendment, permitted only the plea of not guilty. Munn v. Potter, 111 Miss. 180, 71 So. 315; Porter Hardware Company v. Peacock, 129 Miss. 129, 91 So. 856; Strider v. Calvert Fire Ins. Company, 226 Miss. 773, 85 So. 2d 183. Moreover, we have said any plea other than "not guilty" could be stricken or treated as a nullity. Bennett v. Holloway, 55 Miss. 211.

We have always considered defendant's plea of "not guilty" to put in issue all material facts in the declaration. Hogan v. Commercial Credit Co., 150 Miss. 653,

116 So. 298; Bell v. Smith, 155 Miss. 227, 124 So. 331. The plea operated as a denial that the plaintiff was entitled to possession of the property replevied. Wells v. Bullock, 192 Miss. 347, 5 So. 2d 686.

There are several cases from this Court, however, wherein we have permitted the use of a defense in replevin under the ancient plea of not guilty tantamount to a recoupment. In the case of Bloodworth v. Stevens, 51 Miss. 475 (1875), an administratrix sued out an attachment for six bales of cotton for rent due. The tenant pled no rent due and filed notice that on the trial he would introduce evidence to show a contract of intestate to repair a fence to keep stock off the lands cultivated by defendant. This Court, on appeal, said that ''According to the earlier practice such defense could not be made. But it is now well settled that the tenant need not sue in a cross action, and may set up his damages in an extinguishment or reduction of the demand of the landlord in his action. This right of recoupment arises when the cross demand grows out of the same contract or transaction. * * * There might, perhaps, be some doubt whether recoupment is allowable in this suit. Replevin is in form an action ex delicto, and seeks damages for the unlawful taking, etc., of the goods. It has been settled in England that a set-off cannot be pleaded, because it is no justification to a tortious act.''

See also the following cases in which the defendant pled facts amounting to recoupment. McKean v. John Mathews Apparatus Co., 74 Miss. 119, 20 So. 870; Bond, et al. v. Griffin, 74 Miss. 599, 22 So. 187.

On the other hand, this Court has repeatedly held that the defendant could not plead a set-off so as to obtain a money judgment for damages, other than the statutory damages growing out of the wrongful suing out of the writ, as provided for in Sec. 2861, Miss. Code 1942. See Road Material and Equipment Company v. McGowan, et al., 229 Miss. 611, 91 So. 2d 554; Porter

Hardware Company v. Peacock, 129 Miss. 129, 91 So. 856; Vines v. Perry, 208 Miss. 869, 45 So. 2d 734; Valentine v. Little, 161 Miss. 463, 137 So. 329.

There are opinions from this Court in which a set-off or cross-demand was apparently permitted under the plea of not guilty. In the case of Calcote, et al. v. May, 207 Miss. 547, 42 So. 2d 742, the defendant filed a cross-demand for damages caused by stock taken up, and the trial court permitted a jury to award double damages. On appeal, this Court said "We do not digress to comment upon the unique procedure by which the issue in replevin was made up since no point is made thereon." The Court then proceeded to point out that double damages were not allowable under the facts presented.

In the case of Galloway v. Brown, 230 Miss. 471, 93 So. 2d 459, a judgment was entered in the trial court permitting defendants to recover cattle, or their interest in the cattle, under their lien. It was apparent, however, that this case was tried under the livestock estray lien Sec. 4870, Miss. Code 1942, Rec. See also Bond v. Griffin, 74 Miss. 599, 22 So. 187; McKean v. John Mathews Apparatus Co., 74 Miss. 119, 20 So. 869.

After a careful consideration of the history and authorities on replevin, we have reached the conclusion that the amendment to Sec. 2859, Code of 1942, by Laws of 1960, above-mentioned, does not permit a defendant to file a counterclaim as provided by Sec. 1483.5, Code 1942, in a replevin action. We are drawn to this conclusion because a replevin action is a possessory action for specific property, rather than a suit for monetary damages. No provision is made under Chap. 6, Title 12, Vol. 2A, Code 1942, for a judgment for money, except for the wrongful taking, detention, or damages for wrongful suing out of the writ. Moreover, a judgment in replevin may be satisfied by the return of the property, or its value, to the successful

claimant, together with damages provided for in the foregoing code chapter on replevin.

 We are of the opinion, however, that the amendment to Sec. 2859, Code 1942 (Laws 1960), requires any answer which is filed, to conform with Sec. 1475.5, Code of 1942, and it permits a defendant in a replevin action to file an answer in which a statutory claim or lien is pleaded, thereby presenting a statutory issue on which a trial and judgment may be had in accordance with the particular statutory method of enforcement. Such a plea may be made in addition to the traditional defense that replevin does not lie for impounded or distrained animals if the proceeding is regular. Cobbey on Replevin, 2d Ed., Sec. 348, p. 174. Facts, amounting to a recoupment may also be alleged in the answer, under the foregoing amended statute, as an affirmative defense to the plaintiff's right of possession or interest in the property, but facts may not be pleaded in the answer which amount to a counterclaim to set off or establish unrelated debts or demands.

 In the instant case, we are of the opinion that the trial court was correct in striking the counterclaim from the answer for the following reasons: Lamar County has not elected to come under, the State-wide Livestock Law. The distraint of cattle for ("damage feasant") trespass is regulated by statute. Sec. 4870, Miss. Code 1942, regulates the impounding of stock in counties adopting the general stock law. Sec. 4871, Miss. Code 1942, regulates the trespass of animals by breaking and entering enclosed land. In order to establish a lien upon trespassing animals under the latter code section, in counties electing not to come under the state-wide stock law, it was necessary for defendant to allege and prove the animals trespassed by breaking and entering upon lands enclosed by a lawful fence, as defined in Sec. 4865-01, Code 1942. See Cobbey on Replevin, 2d Ed., Sec. 826, p. 435. Defendant neither complied

with the foregoing requirements nor with the statutory method of enforcing his lien, but elected to stand upon his claim that he had acquired title to the cattle by a settlement with the plaintiff. See Pongetti v. Spraggins, 215 Miss. 397, 61 So. 2d 158; New Orleans J. & G. N. R. Company v. Fields, 46 Miss. 573. Since the counterclaim was properly stricken from the answer, the instruction to the jury on the counterclaim was also properly refused by the trial courts.

### III.

It is next contended that the verdict of the jury is contrary to the overwhelming weight of the evidence. The testimony introduced on behalf of defendant shows that the cattle went into defendant's field on September 28, 1960. Defendant admitted in his answer that the cattle belonged to plaintiff on December 15, 1960, and offered evidence to show that on February 2, 1961, the constable and marshal of Sumrall attempted to settle the dispute between appellant and appellee. The constable testified that Mrs. Easterling "asked me to go and tell them if they would give her the Holstein heifer back, they could have the other two." The constable also stated that Mr. Easterling agreed to this arrangement. On the other hand, Mr. and Mrs. Easterling denied that there was an agreement to settle the dispute by giving to appellant two cows then being impounded by him. There is no claim made here that the cattle were held as a pledge made by the owners for damages due by appellee to appellant, but rather that they transferred title to two cows to appellant.

The issue as to whether or not title to the two cows was given to defendant in settlement of a claim for damages by defendant against the owner of the cattle was clearly a question of fact for the determination of the jury. Moreover, the burden of proof to establish defendant's affirmative defense was upon de-

fendant, as was pointed out by this Court in the case of Stewart v. Graham, 93 Miss. 251, 46 So. 245. The syllabus in Southern Reporter in that case is as follows: "Where defendant in replevin alleged that livestock loaned to him was subsequently given to him for certain services, the defense was practically that of payment, and the burden of proving the same was on defendant."

We are of the opinion that the issue of ownership of the cattle in dispute was properly submitted to the jury. The jury determined the issue in favor of plaintiff. We are convinced that the trial judge did not commit error in overruling a motion for a new trial, and since we find no reversible error in the record of the trial of this case, the judgment of the trial court should be, and it is, hereby affirmed.

Affirmed.

*Lee, P. J., and Kyle, Arrington and Ethridge, JJ.,* concur.